JUDGE CRONAN

26 CV 05994

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **TRISHA PARAVAS,**<br>Plaintiff,<br><br>v.<br><br>**LIOR ALDAD, ESQ.**<br>**ALDAD & ASSOCIATES, P.C.**<br>**MICHELLE I. EPSTEIN, ESQ.**<br>**REBHA BEHARRY, ANDREW CORRIDORE, SONAM TENJI SHERPA, LEANNE PHELPS,**<br>Defendants. | **CIVIL ACTION NO.: _________**<br><br>**COMPLAINT FOR DAMAGES, INJUNTIVE RELIEF AND DECLARATORY RELIEF:** |

RECEIVED
SDNY PRO SE OFFICE
2026 JUL 15 PM 4:45

Plaintiff **TRISHA PARAVAS,** appearing pro se, alleges upon personal knowledge as to herself and upon information and belief as to all other matters and alleges as follows:

## I. NATURE OF THE ACTION

1. This action arises from Defendants' intentional, calculated, and bad-faith interference with Plaintiff's business operations, contractual rights, post-closing protections, mail delivery, notices, company communications, agency communications, and professional reputation in connection with condominium units purchased from Plaintiff and/or Plaintiff's company in a development located in Manhattan, New York County.

2. After closing on their condominium units, the buyer defendants refused to follow the contractual procedures governing alleged post-closing complaints and alleged defects. Instead, they pursued an extra-contractual pressure campaign designed to force Plaintiff to perform additional work, absorb post-closing expenses, provide free guidance, retain professionals,

produce materials not required by the governing documents, and remain indefinitely responsible for ownership-side matters after the transfer of ownership, by means of Administrative extortion.

3. Defendants attempted to weaponize governmental and regulatory channels, including the New York Attorney General's office, as leverage to evade the contractual notice, inspection, expert-report, warranty limitation, waiver, and opportunity-to-cure procedures that governed their rights.

4. Defendants' conduct was not a good-faith effort to resolve legitimate issues under the governing documents. It was a deliberate attempt to bypass the parties' contracts, manufacture regulatory pressure, damage Plaintiff's reputation, and force Plaintiff to settle, perform, or expend resources on obligations she never assumed.

5. This action further arises from Defendants' unauthorized interference with Plaintiff's sponsor mail, agency communications, municipal notices, company communications, and business relationships, including Defendants' attempts to hold themselves out as proper contacts, recipients, representatives, or authorized designees for matters belonging to Plaintiff and Plaintiff's companies.

6. Plaintiff seeks declaratory relief, compensatory damages, mandatory injunctive relief, permanent injunctive relief, costs, and all other relief available by law to stop Defendants' continuing interference, enforce the parties' contractual framework, prevent further misuse of regulatory complaints, stop Defendants' unauthorized interference with Plaintiff's communications and mail, and protect Plaintiff's business and professional reputation.

## II. PARTIES

7. Plaintiff TRISHA PARAVAS is an individual domiciled in and a citizen of the State of Florida. At all relevant times, Plaintiff developed, marketed, and sold condominium units in a

development located in New York County and personally sustained the damages alleged herein arising from Defendants' conduct directed at Plaintiff, Plaintiff's business operations, Plaintiff's company communications, Plaintiff's contractual rights, Plaintiff's professional reputation, and Plaintiff's post-closing role in connection with the development.

8. Defendant LIOR ALDAD, ESQ. is, upon information and belief, an individual domiciled in and a citizen of the State of New York. Defendant Aldad is an attorney admitted to practice in the State of New York with an office at 211 Madison Avenue, Suite 24B, New York, New York 10016. Defendant Aldad acted as counsel for one or more of the buyer defendants, including REBHA BEHARRY, ANDREW CORRIDORE, and SONAM TENJI SHERPA, in connection with the condominium dispute and related post-closing matters.

9. Defendant ALDAD & ASSOCIATES, P.C. is, upon information and belief, a New York professional corporation with its principal place of business in New York, New York.

10. Defendant MICHELLE I. EPSTEIN, ESQ. is, upon information and belief, an individual domiciled in and a citizen of the State of New York. Defendant Epstein is an attorney admitted to practice in the State of New York with an office at 251 Fifth Avenue, 4th Floor, New York, New York 10016, and acted as counsel for one or more of the buyer defendants, including LEANNE PHELPS, in connection with the condominium dispute and related post-closing matters.

11. Defendants REBHA BEHARRY and ANDREW CORRIDORE are, upon information and belief, individuals domiciled in and citizens of the State of New York and purchasers of Unit 1, a triplex unit in the condominium development at issue.

12. Defendant SONAM TENJI SHERPA is, upon information and belief, an individual domiciled in and a citizen of the State of New York and a purchaser of a condominium unit in the development at issue.

13. Defendant LEANNE PHELPS is, upon information and belief, an individual domiciled in and a citizen of the State of New York and a purchaser of a penthouse condominium unit in the development at issue.

14. The condominium development that is the subject of this action is located at 34 East 126th Street, New York, New York 10035.

## III. JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) as there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

16. Plaintiff is domiciled in and a citizen of the State of Florida.

17. Upon information and belief, Defendants Lior Aldad, Esq., Aldad & Associates, P.C., Michelle I. Epstein, Esq., Rebha Beharry, Andrew Corridore, Sonam Tenji Sherpa, and Leanne Phelps are citizens of the State of New York.

18. Complete diversity exists because Plaintiff is a citizen of Florida and Defendants are citizens of New York.

19. The amount in controversy exceeds $75,000, exclusive of interest and costs, because Plaintiff seeks damages arising from, among other things, the withholding and impaired control of approximately $340,000 in escrowed funds, lost use of funds, lost interest, carrying costs, legal expenses, professional fees, reputational harm, business disruption, and other consequential damages.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Southern District of New York, the condominium development is located in New York County, the relevant transactions

and post-closing conduct occurred in New York County, and one or more Defendants reside or conduct business in this District.

## IV. FACTUAL ALLEGATIONS

21. Plaintiff is a real estate developer and developed and sold condominium units in a condominium development located in New York County.

22. The buyer defendants purchased units in the development pursuant to written purchase agreements, riders, offering-plan documents, and closing documents.

23. The written purchase agreements and riders governed the parties' post-closing rights and obligations, including procedures applicable to alleged defects, notice of claimed defects, inspection, expert support, opportunity to cure, warranty limitations, waivers, and the handling of post-closing complaints and remediation-related issues.

24. Plaintiff contends that the governing agreements and riders required alleged construction-defect claims to be presented through the contractual process, including the applicable expert-report, notice, inspection, and opportunity-to-cure procedure, and that such defect claims were required to be supported by an expert report within the time period stated in the governing rider provisions.

25. Plaintiff performed her obligations under the agreements except to the extent any performance was excused, discharged, waived, limited, or prevented by Defendants' conduct.

26. The buyer defendants were represented by counsel in connection with their purchase agreements, riders, closing documents, and post-closing rights.

27. Through counsel, the buyer defendants knowingly accepted the contractual allocation of rights, remedies, limitations, waivers, procedures, and obligations governing post-closing

complaints, alleged defects, warranties, notice, inspection, expert support, and opportunity to cure.

28. Plaintiff contends that the buyer defendants expressly or impliedly waived, limited, released, or displaced certain warranty claims and post-closing remedies through the purchase agreements, riders, and governing documents.

29. Having accepted the benefit of the agreements, closed on their units, and acted through counsel, the buyer defendants cannot now evade those same contracts by manufacturing extra-contractual demands, regulatory complaints, post-closing pressure tactics, or false claims of continuing sponsor responsibility.

30. Rather than comply with the contractual framework, the buyer defendants engaged in a deliberate course of conduct intended to bypass Plaintiff's contractual rights, destroy the benefit of Plaintiff's bargain, disrupt Plaintiff's business operations, damage Plaintiff's reputation, and impose obligations Plaintiff did not assume.

31. The buyer defendants communicated directly with contractors, vendors, service providers, governmental agencies, municipal bodies, and other third parties connected with the development while asserting, implying, or creating the appearance of authority they did not possess.

32. The buyer defendants caused or attempted to cause third parties and governmental bodies to redirect business communications, notices, invoices, violations, bills, agency communications, or other operational matters away from Plaintiff and toward persons lacking lawful authority to act for Plaintiff or her companies. See Exhibit A, which identifies Defendant as a representative of Plaintiff's LLC.



NYC Environmental Protection
Bureau of Customer Services
59-17 Junction Blvd.
Flushing, NY 11373-5108

C9 300014111001 C

10008495-003608 3608 1 AB 0.636 T14 <B2>
34 EAST, 126 STREET, NEW YORK, NY 10035 LLC
C/O SONAM TENJI SHERPA
PO BOX 7415
NEW YORK NY 10116-7415

0113000141111001020920260000038962 66

33. The buyer defendants were not members, managers, officers, authorized agents, representatives, c/o designees, mail recipients, company contacts, or lawful representatives of Plaintiff or Plaintiff's companies.

34. The buyer defendants had no right to act for Plaintiff, bind Plaintiff, receive Plaintiff's mail, receive Plaintiff's company notices, change Plaintiff's contact information, direct Plaintiff's contractors, direct Plaintiff's vendors, communicate as Plaintiff's representative, or cause any agency, municipal body, vendor, contractor, service provider, or third party to treat them as Plaintiff's authorized representative.

35. The buyer defendants held themselves out to third parties, government agencies, vendors, contractors, service providers, or entities as the proper c/o, contact, recipient, or representative

for Plaintiff or Plaintiff's business affairs, thereby causing confusion, misdirection of notices, interference with mail, interference with agency communications, and disruption of Plaintiff's business operations.

36. The buyer defendants took possession of, accessed, intercepted, withheld, redirected, retained, controlled, or exercised dominion over sponsor mailbox and mail matters, including mail, notices, bills, packages, violations, municipal correspondence, agency communications, and other communications addressed to Plaintiff or Plaintiff's entities in connection with the development.

37. The buyer defendants' interference with Plaintiff's mailbox and notices caused Plaintiff actual harm, prejudice, and damages. It exposed Plaintiff to missed notices, defaulted violations, misdirected agency communications, unnecessary penalties, reputational injury, regulatory confusion, business disruption, and confusion among agencies and third parties regarding who possessed legal authority to act for Plaintiff. Plaintiff also alleges that one lawsuit seeking approximately $500,000 in damages was served without proper notice to Plaintiff, and that Plaintiff learned of the lawsuit only through press coverage because Defendants had interfered with the Sponsor and LLC mailbox. Another matter involved damages well over $500,000 where Defendants allegedly accepted service on behalf of the Sponsor but failed to inform the Sponsor of the certified mail.

38. The buyer defendants also bypassed the contractual defect and cure process by pursuing complaints and pressure tactics outside the agreed framework rather than first complying with the required notice, inspection, expert-report, waiver, limitation, and opportunity-to-cure procedures.

39. Such extra-contractual conduct included filing or pursuing complaints with governmental or regulatory bodies, including the New York Attorney General's office, concerning alleged building or defect-related matters before the contractual procedures for notice, inspection, expert support, and cure had been followed.

40. Plaintiff contends that Defendants' use of governmental complaints to bypass the parties' contractual defect process constituted an improper attempt to evade the agreed dispute-handling framework, deprive Plaintiff of the benefit of the contractual cure procedure, and extract concessions, free services, professional coordination, document production, and continuing work to which Defendants were not contractually entitled.

41. Defendants did not merely misunderstand the governing documents. They weaponized the Attorney General complaint process as a pressure device to harass Plaintiff, manufacture leverage, and extract free post-closing services, guidance, professional coordination, document production, compliance work, and settlement pressure that Defendants were not entitled to receive from Plaintiff. Defendants were directed by Plaintiff in over 20 emails to retain legal counsel due to conflict of interest because Plaintiff could not advise Defendants on the contracts. Yet, Defendants refused to retain legal counsel and engaged in endless harassment against Plaintiff.

42. Defendants' campaign was calculated to make Plaintiff spend time, money, and resources defending against matters that Defendants were obligated to handle through their own counsel, their own professionals, their own ownership-side governance structure, and the contractual procedures they accepted at closing.

43. Defendants' use of the Attorney General's office was not a good-faith substitute for the parties' agreements. It was an intentional end-run around the contracts, riders, warranty

limitations, waiver provisions, expert-report requirements, notice provisions, and opportunity-to-cure procedures that govern their alleged claims.

44. Defendants attempted to convert a private post-closing dispute into a regulatory weapon by making false, exaggerated, incomplete, and misleading assertions designed to damage Plaintiff's reputation, trigger unnecessary scrutiny, and force Plaintiff to settle or perform obligations she never assumed.

45. Defendants' conduct was not a good-faith effort to follow the governing documents. It was a coordinated pressure campaign designed to force Plaintiff to perform additional post-closing work, provide additional documents, retain professionals, expend money, and continue advising Defendants after the condominium unit sales closed.

46. Defendants repeatedly contacted Plaintiff concerning post-closing matters. Plaintiff repeatedly advised Defendants to retain appropriate counsel, managing professionals, consultants, expeditors, engineers, accountants, property managers, and other ownership-side professionals to address ownership-side issues after closing.

47. Instead of accepting responsibility for their own post-closing obligations, Defendants attempted to shift their costs, burdens, professional-retainer obligations, and owner-side responsibilities back onto Plaintiff.

48. Defendants sought to transform Plaintiff into an unpaid post-closing construction administrator, expeditor coordinator, document repository, legal advisor, consultant, managing agent, compliance representative, and permanent point of contact, despite the fact that Plaintiff's role as developer and seller concluded except for any limited obligations expressly imposed by law or the governing documents.

49. One example concerns the alleged boiler-related issue. Plaintiff contends that there is no boiler in the building and that any claim based on a boiler condition is factually baseless, misleading, unsupported, and designed to create false regulatory pressure.

50. Plaintiff further contends that the absence of a boiler was consistent with the building's construction, approvals, and temporary certificate of occupancy process.

51. After ownership transferred, Plaintiff was informed by governmental agencies and related personnel that Plaintiff was no longer the proper owner-side party to retain professionals or act as the ongoing point of contact for certain post-closing building-level matters.

52. Any required ownership-side retainer for an expeditor, consultant, contractor, vendor, managing agent, engineer, accountant, attorney, or other professional must be handled by the current ownership-side parties, not imposed on Plaintiff without contractual or legal basis.

53. Defendants nevertheless attempted to use the Attorney General's office and other pressure channels to force Plaintiff to retain or pay for professionals to address matters that Defendants, as unit owners and ownership-side parties, were required to address through their own counsel, managing structure, board, expeditor, retained professionals, or other lawful ownership-side channels.

54. Defendants also issued or supported sweeping post-closing demands for documents, materials, construction records, vendor invoices, warranties, manuals, plans, service contracts, equipment specifications, bank statements, transaction logs, financial records, and other categories of materials that are not required to be produced to them in the manner demanded under the Offering Plan, purchase agreements, riders, or applicable governing documents.

55. These overbroad document demands were not limited to a valid contractual right or specific unresolved obligation. They were calculated to burden Plaintiff, consume Plaintiff's time,

interfere with Plaintiff's business operations, create leverage, and falsely portray Plaintiff as indefinitely responsible for every building-related administrative matter after closing.

56. Plaintiff contends that the Offering Plan and governing documents already provide the material information required for the purchasers' ownership interests, and that Defendants are not entitled to force Plaintiff to gather and produce thousands of pages of construction, vendor, financial, or administrative materials that are not required by the governing documents.

57. Following the closing of the condominium unit sales, the buyer defendants failed and refused to take the steps necessary to create, establish, organize, operationalize, or transition a functioning homeowners association, condominium board, or comparable ownership-side governance structure for the building.

58. The buyer defendants took the position that no such governance structure needed to be timely established or operationalized, notwithstanding the practical and legal necessity of a functioning ownership-side entity to receive and address future building-level notices, violations, compliance matters, and operational obligations after the transfer of ownership.

59. As a result of the absence of an operational ownership-side governance entity, municipal agencies and other governmental authorities continued to direct notices, violations, fines, correspondence, and enforcement matters relating to the building to Plaintiff instead of to a properly functioning ownership-side governance body.

60. Plaintiff's role as developer and seller concluded upon the sale and transfer of the condominium units except for any limited obligations expressly imposed by law or the governing documents. Plaintiff is not the proper ongoing point of contact in perpetuity for future ownership-side sanitation matters, sidewalk matters, Department of Buildings matters, expeditor

matters, municipal compliance matters, agency communications, or post-closing operational issues arising after transfer of ownership.

61. Defendants' failure to complete the governance transition and to ensure that a proper ownership-side entity existed to receive and address future building-level matters caused Plaintiff continuing damages, including administrative burden, diversion of time and resources, business disruption, legal expense, reputational harm, exposure to regulatory confusion, and harm to Plaintiff's ability to pursue future real estate projects without improper scrutiny generated by Defendants' false or misleading complaints.

62. Upon information and belief, Defendants Lior Aldad, Esq. and Michelle I. Epstein, Esq. were aware of the written purchase agreements and riders governing post-closing complaints, notice-and-cure procedures, warranty limitations, waiver provisions, expert-report requirements, and the contractual framework for addressing alleged defects.

63. Upon information and belief, notwithstanding that contractual framework, the attorney defendants encouraged, directed, ratified, or knowingly participated in efforts to bypass the agreed post-closing procedures and to pursue extra-contractual pressure against Plaintiff.

64. Upon information and belief, such conduct included supporting, advancing, or refusing to correct defect-related complaints and positions without requiring compliance with the contractual expert-report and cure procedure that Plaintiff contends governs such claims.

65. Upon information and belief, the attorney defendants participated in or encouraged the continuation of complaints and accusations to governmental or regulatory bodies, including the New York Attorney General's office, before the contractual procedures for notice, inspection, expert support, waiver, limitation, and opportunity to cure had been followed.

66. Plaintiff contends that the attorney defendants' conduct was not limited to ordinary advocacy. It constituted knowing participation in conduct designed to interfere with Plaintiff's contractual rights, business operations, professional reputation, post-closing protections, mail, notices, agency communications, and company affairs.

67. Defendants also made, caused to be made, supported, or refused to correct statements and complaints to governmental or regulatory bodies, including the New York Attorney General's office, that Plaintiff contends were false, misleading, incomplete, and calculated to damage Plaintiff's reputation and business standing.

68. Defendants knew or should have known that regulatory complaints against a real estate developer can cause serious consequences, including heightened scrutiny, reputational harm, interference with future projects, damage to business relationships, and injury to professional standing.

69. Defendants' statements and complaints were not made for the legitimate purpose of following the parties' contracts or preserving lawful rights. They were made as part of a deliberate pressure campaign designed to harass Plaintiff, weaponize governmental involvement, impose waived or non-existent obligations, avoid Defendants' own post-closing responsibilities, extract free services and professional assistance, and create settlement leverage through reputational and regulatory pressure.

70. Plaintiff built and delivered a lawful, safe, permitted condominium project and obtained required approvals through the Department of Buildings and other applicable processes. Defendants' attempt to portray Plaintiff as responsible for every post-closing ownership-side issue is false, unfair, and contrary to the parties' governing documents.

71. Defendants' actions have caused Plaintiff to expend substantial time, resources, and effort responding to baseless or overbroad demands, correcting confusion created by Defendants, addressing agency and mail issues, protecting Plaintiff's business reputation, and defending against a continuing campaign of contractual evasion and regulatory pressure.

72. An actual and justiciable controversy exists between the parties concerning whether the buyer defendants possess any authority to act on Plaintiff's behalf, whether they may hold themselves out as Plaintiff's c/o or point of contact, whether they may bypass the contractual notice-and-cure and expert-report process, whether they may use regulatory complaints as leverage to obtain extra-contractual benefits, whether they may impose waived or limited warranty claims upon Plaintiff, and whether they may continue to leave Plaintiff as the de facto point of contact for future building-level notices, violations, and compliance matters after the sale of the units.

73. Defendants' conduct is ongoing and, unless restrained, will continue to interfere with Plaintiff's business operations, company communications, mail, notices, contractual rights, reputation, and ability to pursue future real estate projects without improper regulatory pressure caused by Defendants' false or misleading accusations.

## FIRST CAUSE OF ACTION

### Declaratory Judgment Striking the Buyers as unauthorized beneficiaries of Plaintiff's companies Against Buyer Defendants Regarding Authority, Contractual Procedures, and Post-Closing Conduct

74. Plaintiff repeats and realleges paragraphs 1 through 73 as though fully set forth herein.

unauthorized agency communications, or false assertions of authority to evade the contractual framework governing their post-closing rights and obligations.



NYC Environmental Protection

Bureau of Customer Services
59-17 Junction Blvd.
Flushing, NY 11373-5108

C9 300014111001 C

10008495-003608 3608 1 AB 0.636 T14 <B2>
34 EAST, 126 STREET, NEW YORK, NY 10035 LLC
C/O SONAM TENJI SHERPA
PO BOX 7415
NEW YORK NY 10116-7415

011300014111100102092026000003896266

**SECOND CAUSE OF ACTION**

Breach of Contract Against Buyer Defendants for Failure to Perform Condition Precedent

80. Plaintiff repeats and realleges paragraphs 1 through 79 as though fully set forth herein.

81. Plaintiff and the buyer defendants entered into valid and enforceable written purchase agreements, riders, closing documents, and related agreements governing the sale of the condominium units and the handling of post-closing issues.

82. Plaintiff performed her obligations under those agreements except to the extent any performance was excused, discharged, limited, waived, or prevented.

83. The buyer defendants breached the parties' written agreements and riders by *failing to comply with the notice, inspection, expert-report, opportunity-to-cure*, warranty limitation, waiver, and other post-closing procedures governing complaints and alleged defects.

84. The buyer defendants further breached the agreements by pursuing extra-contractual pressure, regulatory complaints, overbroad demands, unauthorized third-party communications, and interference instead of the agreed contractual process.

85. The buyer defendants further breached the agreements by attempting to impose obligations upon Plaintiff that were waived, limited, excluded, or not required under the parties' governing documents.

86. The buyer defendants further breached the agreements by attempting to force Plaintiff to serve as their post-closing construction administrator, document repository, expeditor coordinator, legal advisor, managing agent, consultant, compliance coordinator, and continuing operational point of contact.

87. As a direct and proximate result of the buyer defendants' breaches, Plaintiff sustained damages in an amount to be determined at trial, including economic loss, lost time, operational disruption, administrative burden, legal expense, reputational harm, and expenses incurred in responding to Defendants' extra-contractual conduct.

**THIRD CAUSE OF ACTION**

Declaratory Judgment to "Enforce Sale Contractual Agreements" executed by the Buyers Regarding Contractual Waiver, Limitation of Warranties, and No Further Sponsor Obligations for Items Non-Existent in the Development Architectural Plans

88. Plaintiff repeats and realleges paragraphs 1 through 87 as though fully set forth herein.

89. An actual and justiciable controversy exists between Plaintiff and the buyer defendants concerning the parties' respective rights and obligations under the purchase agreements, riders, Offering Plan, closing documents, and related governing documents.

90. The buyer defendants were represented by counsel in connection with their purchase transactions and executed written agreements and riders governing their rights, remedies, procedures, limitations, waivers, and obligations relating to post-closing complaints, alleged defects, warranties, notice, inspection, expert support, and opportunity to cure.

91. Plaintiff contends that the buyer defendants knowingly and voluntarily accepted contractual limitations and waivers, including provisions that limited or waived certain warranty claims and required alleged defect-related issues to be raised only through the agreed contractual procedures.

92. Despite those contractual limitations and waivers, the buyer defendants have attempted to impose continuing post-closing obligations upon Plaintiff that are not required by the purchase agreements, riders, Offering Plan, closing documents, or applicable law.

93. The buyer defendants have further attempted to use governmental complaints, including complaints to the New York Attorney General's office, to evade the contractual limitations and waivers they accepted through counsel and to obtain extra-contractual benefits from Plaintiff after closing.

94. Plaintiff is entitled to a declaration that the buyer defendants are bound by the purchase agreements, riders, Offering Plan, closing documents, and related governing documents, including all applicable waiver, limitation, notice, inspection, expert-report, and opportunity-to-cure provisions.

95. Plaintiff is further entitled to a declaration that the buyer defendants may not revive, expand,

or manufacture waived or limited warranty claims by pursuing extra-contractual pressure, regulatory complaints, overbroad document demands, or post-closing demands outside the agreed contractual framework.

96. Plaintiff is further entitled to a declaration that, except for any specific obligations expressly imposed by the governing documents or applicable law, Plaintiff has no continuing obligation to act as the buyer defendants' post-closing construction administrator, expeditor, document repository, building manager, legal advisor, consultant, compliance coordinator, or owner-side representative.

97. Plaintiff is further entitled to a declaration that the buyer defendants must retain their own counsel, managing agent, expeditor, consultants, vendors, contractors, engineers, accountants, or professionals for ownership-side matters arising after closing, and may not shift those costs or responsibilities to Plaintiff through threats, regulatory complaints, or extra-contractual demands.

98. Plaintiff is further entitled to a declaration that Defendants may not use the Attorney General's office, municipal agencies, vendors, contractors, expeditors, consultants, or other third parties as instruments of coercion to revive waived rights, expand limited warranty claims, demand free services, or impose post-closing obligations that do not exist under the governing documents or applicable law.

**FOURTH CAUSE OF ACTION**

<u>Civil Theft and Wrongful Dominion Over Sponsor Mailbox, Mail, Notices, and Correspondence</u>

<u>Against Buyer Defendants</u>

99. Plaintiff repeats and realleges paragraphs 1 through 98 as though fully set forth herein.

100. At all relevant times, Plaintiff had ownership of, possession of, and/or an immediate superior right to possess the sponsor mailbox, mail receptacle, mail, packages, notices, bills,

violations, agency communications, municipal correspondence, and business correspondence addressed to Plaintiff or Plaintiff's entities in connection with the condominium development and Plaintiff's business operations.

101. The buyer defendants, without authorization, took possession of, accessed, intercepted, withheld, redirected, removed, retained, controlled, or otherwise exercised dominion over Plaintiff's mailbox, mail receptacle, mail, packages, notices, bills, violations, agency communications, municipal correspondence, and business correspondence.

102. Such conduct included causing Plaintiff's mail, bills, notices, violations, and other correspondence to be sent to, received by, controlled by, or held through persons or addresses not authorized by Plaintiff, including by holding themselves out as the proper c/o, contact, recipient, or representative for Plaintiff or Plaintiff's business affairs.


Environmental Protection
Bureau of Customer Services
59-17 Junction Blvd.
Flushing, NY 11373-5108

C9 300014111001 C

10008495-003608 3608 1 AB 0.636 T14 <B2>
34 EAST, 126 STREET, NEW YORK, NY 10035 LLC
C/O SONAM TENJI SHERPA
PO BOX 7415
NEW YORK NY 10116-7415

011300014111100102092026000003896266

103. The buyer defendants had no legal right to take, control, intercept, retain, redirect, or withhold Plaintiff's mailbox, mail, packages, notices, bills, violations, agency communications, municipal correspondence, or business correspondence.

104. The buyer defendants' conduct was intentional, unauthorized, and undertaken in derogation of Plaintiff's superior right to receive and control communications directed to Plaintiff and Plaintiff's companies.

105. As a direct and proximate result of the buyer defendants' conduct, Plaintiff was deprived of possession, use, control, and timely receipt of Plaintiff's mail and related property, suffered interference with business operations, lost time, administrative burden, confusion in billing and

notice matters, exposure to agency and municipal consequences, reputational harm, and damages in an amount to be determined at trial.

106. The buyer defendants' conduct constituted conversion and wrongful dominion over specifically identifiable property belonging to Plaintiff, to the exclusion of Plaintiff's rights.

**FIFTH CAUSE OF ACTION**

Federal Mail Theft, Interference with Plaintiff's Mail, Legal Notices, and Business Communications Against Buyer Defendants

107. Plaintiff repeats and re-alleges paragraphs 1 through 106 as though fully set forth herein.

108. Plaintiff maintained a mailbox at the byers' residence which it would check frequently when its manager would check during visits to New York. Legal notices as well as administrative correspondence was and is, sent to that mailbox in the name of the Plaintiff.

109. The buyers knew that only the Plaintiff received mail at that mailbox, and with such knowledge, removed mail from the mailbox without the consent or authorization from the Plaintiff and retained its U.S. mail for their own purposes and intent and did not turn over that mail to the Plaintiff's manager upon her frequent visits to the property to check the mail.

110. The buyer defendants intentionally took and withheld, Plaintiff's Federal mail without any legal right to do so. They converted the Plaintiff's mail by taking from the mailbox and retaining it at their respective residences. The taking and retention of the Plaintiff's mail, was a criminal and wrongful conversion of the Plaintiff's mail which caused the Plaintiff damages due to the legal consequences of not responding to notices sent to the mailbox in a timely manner.

111. The buyer defendants continue to withhold the Plaintiff's mail despite a direct damad for the converted mail by Plaintiff's manager.

112. The buyers' taking and retention of the Plaintiff's mail was intentional, wrongful and in violation of the Federal Statute above, prohibiting the taking and conversion of another's mail.

113. To date, the Buyer Defendants continue to take and withhold, the Plaintiff's mail in direct violation of the Federal statute and Plaintiff's demand to cease the removal of its mail.

114. As a direct and proximate result of the buyer defendants' interference with Plaintiff's mail, Plaintiff has suffered damage to business relationships, economic loss, diversion of time and resources, administrative burden, reputational harm, and other damages in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**

Declaratory Judgment and Mandatory Injunctive Relief Ordering Buyers to create a "Condominium HOA" releasing Sponsor from future duties in perpetuity Concerning Post-Closing Condominium Governance and Municipal Responsibility

115. Plaintiff repeats and realleges paragraphs 1 through 114 as though fully set forth herein.

116. Following the sale of the condominium units, the buyer defendants, as the ownership side of the building, became responsible for participating in and completing the transition of post-closing governance, operations, and municipal responsibility to the proper ownership-side governance structure.

"More than eighteen (18) months after the sale closing, Plaintiff as of July 14, 2026, The Condominiums developer was compelled to pay delinquent Con Edison charges for the condominium's common-area electrical service after the accounts, which had remained in Plaintiff's name, were referred to collections. The charges were the responsibility of Defendants, and Plaintiff incurred damages as a direct and proximate result of Defendants' failure to assume responsibility for the utility accounts." Plaintiff is noted as Owner at all government agencies.

EXHBIT A - CONEDISON COLLECTIONS NOTICE TO PLAINTIF AS OF 06/22/2026 ATTAChed.

EXHIBIT 9A

conEdison

Current Balance Due **$92.96** Pay Immediately

34 E 126th ST [redacted] June 22, 2026

Dear Customer,

Your final bill on this account is overdue. If your check is not already in the mail, please remit payment immediately.

If we do not receive payment within 10 days, your account will be placed with a collection agency and your credit history will be in jeopardy. You may also be responsible for paying any associated legal fees and charges incurred in collecting this bill.

Please mail your payment today to avoid any further collection action.

Sincerely,

Con Edison

AGCY WRN

Wondering if you can get a better deal on your energy needs? Explore your choices at **www.coned.com/esco.**



conEdison PO BOX 1702
NEW YORK, NY 10116-1702

**Scan to Pay**

**Account number:** [redacted]

| | |
|---|---|
| **Pay Immediately** | **$92.96** |
| **Amount Enclosed** | |

Please make checks payable to **Con Edison.**

34 EAST 126 STREET LLC
PO BOX 7415
NEW YORK NY 10116-7415

conEdison
PO BOX 1702
NEW YORK, NY 10116-1702

0020 47959663288 50000009296 50000009296

31183

117. The buyer defendants failed and refused to complete or facilitate that transition and thereby left Plaintiff improperly tied to future building-level notices, violations, correspondence, compliance matters, expeditor issues, agency communications, and municipal matters long after Plaintiff's role as developer and seller substantially concluded.

118. As a direct result of the buyer defendants' failure to establish and operationalize a functioning ownership-side governance structure and to ensure that future building-level notices and compliance matters are directed to the proper responsible entity, governmental agencies and other authorities continued to direct such matters to Plaintiff.

119. Plaintiff suffered and continues to suffer damages as a result of the buyer defendants' conduct, including administrative burden, diversion of time and resources, economic loss, legal expense, reputational harm, regulatory confusion, and continuing exposure to matters for which Plaintiff is not the proper ongoing responsible party.

120. An actual and justiciable controversy exists between the parties concerning whether Plaintiff may continue to be treated as the responsible point of contact for future building-level municipal compliance matters after the sale of the units, and whether the buyer defendants must take the steps necessary to transition those responsibilities to the proper ownership-side governance structure.

121. Plaintiff is entitled to a declaration that, except for any limited obligations expressly imposed by law or the governing documents, Plaintiff is not the proper ongoing responsible party for future ownership-side sanitation matters, sidewalk matters, Department of Buildings matters, expeditor matters, municipal communications, agency notices, or other post-closing municipal compliance issues arising after transfer of ownership.

122. Plaintiff is further entitled to a declaration that the buyer defendants must take the steps required under the governing documents and applicable law to complete the transition of condominium governance and designate the proper ownership-side entity or contact for future building-level notices, violations, agency communications, municipal communications, and compliance matters.

123. Plaintiff is also entitled to mandatory injunctive relief directing the buyer defendants to execute, deliver, file, or otherwise complete all reasonably necessary acts, notices, designations, corrections, and transition steps required to shift future ownership-side governance and municipal responsibility away from Plaintiff and to the proper ownership-side governance structure, to the extent required by the governing documents and applicable law.

## SEVENTH CAUSE OF ACTION

Conspiracy to Defraud Plaintiff by initiating AG Complaint to Pressure Plaintiff to Perform Unwarranted & Out of Scope "Condominium Offering Plan" duties with client Buyers Against Defendants Lior Aldad, Esq., ALDAD & ASSOCIATES, P.C. and Michelle I. Epstein, Esq.

124. Plaintiff repeats and re-alleges paragraphs 1 through 123 as though fully set forth herein.

125. Valid and enforceable written purchase agreements, riders, and related governing documents existed between Plaintiff and the buyer defendants.

126. The attorney defendants knew of the existence of those agreements and of the contractual procedures governing post-closing complaints, alleged defects, warranty limitations, waiver provisions, expert support, notice, inspection, and opportunity to cure.

127. Despite that knowledge, the attorney defendants intentionally encouraged, advanced, supported, directed, ratified, or participated in conduct that caused or contributed to the buyer defendants' breach and evasion of those contractual procedures.

128. Such conduct included advancing or supporting extra-contractual complaints, regulatory pressure, overbroad demands, and positions designed to bypass the contractual dispute-handling framework, including the contractual expert-report, notice, inspection, waiver, limitation, and cure procedure that Plaintiff contends governed alleged defect claims.

129. Such conduct further included supporting, encouraging, advancing, or refusing to withdraw or correct complaints and accusations made to governmental or regulatory bodies, including the New York Attorney General's office, before the contractual procedure for handling alleged defects had been followed.

130. By knowingly participating in and promoting conduct intended to evade the contractual framework, the attorney defendants interfered with Plaintiff's contractual rights, deprived Plaintiff of the benefit of the agreed notice-and-cure and expert-report process, and assisted the buyer defendants in exerting improper pressure on Plaintiff.

131. The attorney defendants' conduct exceeded ordinary advocacy because it knowingly advanced or facilitated positions designed to defeat Plaintiff's contractual protections and impose non-contractual obligations on Plaintiff.

132. As a direct and proximate result of the attorney defendants' conduct, Plaintiff sustained damages in an amount to be determined at trial, including operational disruption, diversion of time and resources, economic loss, reputational harm, legal expense, and expense incurred in responding to the extra-contractual conduct.

## EIGHTH CAUSE OF ACTION

Improper Escrow Structure and Tortious Interference with Release of Escrowed Funds Against Defendants Lior Aldad, Esq. and Aldad & Associates, P.C.

133. Plaintiff repeats and realleges paragraphs 1 through 132 as though fully set forth herein.

134. At all relevant times, Defendant Lior Aldad, Esq. and Aldad & Associates, P.C. represented the buyer defendants in connection with the transaction, escrow arrangement, and related post-closing matters. Plaintiff does not allege that Defendant Aldad acted as Plaintiff's counsel or as Plaintiff's escrow agent.

135. Plaintiff and/or Plaintiff's LLC were represented by Adam Leitman Bailey's firm in connection with the transaction and escrow arrangement. Plaintiff alleges that Adam Leitman Bailey's firm owed fiduciary and professional duties to Plaintiff and/or Plaintiff's LLC in connection with the review, approval, and execution of the escrow agreement.

136. Plaintiff alleges that Defendant Aldad, acting on behalf of the buyer defendants, drafted, structured, advanced, and/or caused the implementation of an escrow agreement pursuant to which approximately $340,000 of Plaintiff's funds were withheld in escrow.

137. Plaintiff further alleges that Defendant Aldad drafted and structured the escrow agreement in a manner that gave approval and control rights to the buyers' side, the title company, and Plaintiff's former counsel, while leaving Plaintiff without a fair, practical, or enforceable mechanism to control, approve, object to, or compel release of the escrowed funds.

138. Plaintiff alleges that the escrow structure was unfair, one-sided, and materially prejudicial because it allowed Plaintiff's funds to be controlled or potentially released without Plaintiff's direct consent, authorization, or meaningful participation.

139. Plaintiff further alleges that after she identified these defects and objected to the escrow arrangement, Defendant Aldad and the title company refused to amend the escrow terms, refused to approve or facilitate release of the escrowed funds, and continued to rely on an escrow structure that deprived Plaintiff of meaningful control over approximately $340,000 of Plaintiff's funds. Plaintiff alleges that this refusal was not inadvertent but was a knowing and deliberate

effort to maintain control over Plaintiff's funds despite Plaintiff's objections and despite the absence of any fair or enforceable mechanism for Plaintiff to compel release.

140. Upon information and belief, Defendant Aldad had personal, professional, referral, business, and/or other material relationships with the title company and with Plaintiff's former counsel, Adam Leitman Bailey's firm, which were material to the manner in which the escrow agreement was drafted, approved, implemented, and maintained.

141. Plaintiff alleges that these relationships and circumstances were material to Plaintiff's ability to evaluate the fairness, neutrality, and enforceability of the escrow arrangement, including whether the escrow structure adequately protected Plaintiff's funds and release rights.

142. Plaintiff further alleges that Defendant Aldad used or benefited from his relationships with the title company and Plaintiff's former counsel to cause Plaintiff's former counsel to approve or sign an escrow agreement that did not adequately protect Plaintiff's rights, funds, consent authority, or release rights.

143. To the extent fiduciary duties, escrow duties, or professional duties were owed directly to Plaintiff in connection with the escrow arrangement, those duties were owed by Plaintiff's own counsel, the escrow holder, the title company, and/or other parties acting in a fiduciary, escrow, or professional capacity, not by Defendant Aldad as Plaintiff's counsel.

144 Defendant Aldad and Aldad & Associates, P.C. are alleged to be liable for drafting, facilitating, advancing, maintaining, and/or enforcing an unfair and one-sided escrow arrangement that stripped Plaintiff of practical control over approximately $340,000 of Plaintiff's funds, obstructed or delayed the release of those funds, and caused Plaintiff to suffer substantial and foreseeable financial harm.

145. As a direct and proximate result of Defendant Aldad's conduct, Plaintiff was deprived of the timely use, control, and benefit of approximately $340,000 in escrowed funds. Defendant Aldad's refusal to correct the escrow structure or facilitate release of the escrowed funds caused Plaintiff to suffer significant damages, including loss of use of funds, lost interest, carrying costs, delay damages, increased legal expenses, professional fees, business disruption, financial strain, reputational harm, and other consequential damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

Conspiracy to commit Tortious Interference with Existing and Prospective Business Relations and Wrongful Means Against Defendants Lior Aldad, Esq. and Michelle I. Epstein, Esq.

146. Plaintiff repeats and realleges paragraphs 1 through 145 as though fully set forth herein.

147. Plaintiff had existing and prospective business relationships with contractors, vendors, service providers, governmental contacts, municipal contacts, consultants, expeditors, real estate professionals, and other third parties involved in the operation, servicing, maintenance, compliance, development, and post-closing affairs of the building and Plaintiff's broader real estate business.

148. The attorney defendants knew of those relationships.

149. The attorney defendants intentionally interfered with those relationships by wrongful means, including knowingly advancing extra-contractual demands, supporting or encouraging conduct that bypassed the agreed contractual defect and cure procedures, and supporting or advancing false or misleading assertions concerning authority, responsibility, waiver, warranty limitations, and post-closing obligations relating to the building.

150. The attorney defendants further contributed to the disruption of Plaintiff's business operations and third-party relationships by supporting or encouraging the use of governmental

and regulatory complaints, including complaints to the New York Attorney General's office, as a means of pressure before the contractual notice, inspection, expert-report, waiver, limitation, and opportunity-to-cure procedure had been followed.

151. The attorney defendants' conduct was undertaken in a manner that went beyond ordinary advocacy and was intended to defeat Plaintiff's contractual protections, interfere with Plaintiff's business operations, damage Plaintiff's reputation, and impose continuing operational, reputational, and economic harm upon Plaintiff.

152. As a direct and proximate result of the attorney defendants' interference, Plaintiff suffered damages including disruption of business relationships, diversion of time and resources, reputational harm, economic loss, legal expense, and continuing burdens associated with post-closing disputes and building-related matters.

## TENTH CAUSE OF ACTION

Civil Theft and Misappropriation of Sponsor Staging Property Against Buyer Defendants

153. Plaintiff repeats and re-alleges paragraphs 1 through 152 as though fully set forth herein.

154. Plaintiff and/or Plaintiff's Sponsor entity owned, possessed, and/or had an immediate superior right to possess certain Sponsor property, materials, fixtures, furnishings, equipment, and/or other property associated with the condominium development.

155. The buyer defendants knowingly took possession of, retained, withheld, used, controlled, and exercised unauthorized dominion over Sponsor property valued at approximately **$86,175.00** without Plaintiff's consent, without legal authority, and without paying for the property.

156. Plaintiff alleges that the buyer defendants knew or should have known that the property belonged to Plaintiff and/or the Sponsor and was not included as property they were entitled to keep without payment, authorization, or lawful transfer.

157. The buyer defendants' retention of the Sponsor property was intentional, unauthorized, and wrongful. By keeping valuable Sponsor property without paying for it, returning it, or obtaining lawful authority to retain it, the buyer defendants deprived Plaintiff and/or the Sponsor of the use, possession, value, and benefit of the property.

158. Plaintiff alleges that the buyer defendants' conduct constituted wrongful dominion and control over property belonging to Plaintiff and/or the Sponsor, to the exclusion of Plaintiff's rights, and therefore constitutes conversion under New York law.

159. Plaintiff further alleges that the buyer defendants' conduct amounted to civil theft, embezzlement, and/or misappropriation because the buyer defendants knowingly retained valuable Sponsor property that did not belong to them, concealed or failed to disclose their retention of the property, failed to pay for the property, and deprived Plaintiff and/or the Sponsor of property valued at approximately $85~~,000~~. $86,175.00

160. Plaintiff alleges that the buyer defendants did not retain the Sponsor property by mistake, accident, or good-faith misunderstanding. Rather, Plaintiff alleges that the buyer defendants knowingly and deliberately retained the property with the expectation that Plaintiff and/or the Sponsor would not discover, object to, or pursue recovery of the property.

161. Plaintiff is entitled to recover the value of the wrongfully withheld Sponsor property, estimated at approximately ~~$85,000~~ $86,175.00, together with consequential damages, loss of use, interest, costs, and such other relief as the Court deems just and proper.

162. To the extent the property remains identifiable and, in the possession, custody, or control of the buyer defendants, Plaintiff is entitled to replevin and/or mandatory injunctive relief requiring the immediate return of the property to Plaintiff and/or the Sponsor.

163. As a direct and proximate result of the buyer defendants' wrongful conduct, Plaintiff suffered damages in an amount to be determined at trial, including but not limited to the value of the withheld Sponsor property, loss of use, replacement costs, business disruption, consequential damages, and any additional relief available for intentional misappropriation or wrongful retention of property.

## ELEVENTH CAUSE OF ACTION

Permanent and Mandatory Injunction Against All Defendants

164. Plaintiff repeats and realleges paragraphs 1 through 163 as though fully set forth herein.

165. Defendants' conduct is ongoing and, unless restrained, will continue to interfere with Plaintiff's business operations and relationships, continue to misdirect building-level operational and compliance matters to Plaintiff, continue to control or redirect Plaintiff's sponsor mailbox and mail matters, continue to interfere with Plaintiff's company communications and agency notices, continue to bypass the parties' contractual framework for alleged defect claims, and continue to damage Plaintiff's reputation through false or misleading regulatory pressure.

166. Plaintiff has no adequate remedy at law to the extent Defendants continue to hold Plaintiff out as the proper ongoing point of contact for future ownership-side building matters, continue to interfere with Plaintiff's contractors, vendors, or service providers, continue to control or redirect Plaintiff's mailbox and mail matters, continue to interfere with agency communications, or continue to pursue defect-related pressure tactics outside the contractual process.

167. Plaintiff is entitled to a permanent injunction enjoining the buyer defendants from representing, directly or indirectly, that Plaintiff is the proper ongoing point of contact for future ownership-side building operations, notices, violations, municipal communications, agency communications, or compliance matters after transfer of ownership, except as expressly required by law or the governing documents.

168. Plaintiff is entitled to a permanent injunction enjoining Defendants from making unauthorized demands or directives to contractors, vendors, service providers, governmental bodies, municipal bodies, expeditors, consultants, or third parties on the premise that Plaintiff remains responsible for post-transfer ownership-side governance matters.

169. Plaintiff is entitled to a permanent injunction enjoining Defendants from taking, intercepting, withholding, redirecting, controlling, or interfering with Plaintiff's mailbox, mail, notices, bills, packages, municipal communications, agency communications, violations, company correspondence, or business correspondence.

170. Plaintiff is entitled to a permanent injunction enjoining Defendants from bypassing the contractual notice-and-cure, expert-report, waiver, limitation, and opportunity-to-cure framework applicable to post-closing complaints and alleged defects.

171. Plaintiff is further entitled to injunctive relief restraining Defendants from representing or implying to any governmental agency, municipal body, contractor, vendor, service provider, utility provider, mail carrier, or third party that Defendants are authorized to act for Plaintiff, receive Plaintiff's mail, receive Plaintiff's company notices, change Plaintiff's agency contact information, or communicate as Plaintiff's representative.

172. Plaintiff is further entitled to injunctive relief requiring Defendants to cease interfering with Plaintiff's mail, notices, agency communications, company contact information, and business

correspondence, and to take all necessary steps to correct any unauthorized contact, address, agency, c/o, or representative information Defendants caused to be changed or misdirected.

173. Plaintiff is further entitled to injunctive relief restraining Defendants from using governmental or regulatory complaints as a substitute for the contractual notice, inspection, expert-report, waiver, limitation, and opportunity-to-cure procedures required by the parties' agreements and governing documents.

174. Plaintiff is further entitled to injunctive relief restraining Defendants from making further false, misleading, incomplete, or unauthorized statements to governmental agencies or third parties concerning Plaintiff's alleged continuing responsibility for ownership-side post-closing matters, except to the extent Defendants make truthful statements in a lawful proceeding and in compliance with the parties' governing documents.

175. Plaintiff is further entitled to mandatory injunctive relief requiring Defendants to withdraw, correct, or supplement any false or misleading agency contact information, complaints, notices, or communications that identify Plaintiff as the ongoing responsible party for matters that belong to the buyer defendants, the unit owners, the condominium board, the homeowners association, or any ownership-side governance structure.

176. Plaintiff is further entitled to mandatory injunctive relief requiring Defendants to stop demanding that Plaintiff retain, pay for, or coordinate professionals, including expeditors, consultants, contractors, vendors, engineers, accountants, managing agents, or legal professionals, for post-closing ownership-side matters that are not Plaintiff's responsibility under the governing documents or applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. On the First Cause of Action, declaring that the buyer defendants are not agents, managers, authorized representatives, c/o designees, company contacts, or authorized mail recipients for Plaintiff and possess no authority to act on Plaintiff's behalf, alter Plaintiff's agency communications, interfere with Plaintiff's mail, or bypass the contractual procedures governing post-closing complaints;

B. On the Second Cause of Action, awarding Plaintiff compensatory damages against the buyer defendants in an amount to be determined at trial;

C. On the Third Cause of Action, declaring that the buyer defendants are bound by the contractual waiver, limitation, notice, inspection, expert-report, and opportunity-to-cure provisions in the governing documents, and declaring that Plaintiff has no further sponsor obligations except as expressly imposed by law or the governing documents;

D. On the Fourth Cause of Action, awarding Plaintiff compensatory damages against the buyer defendants for conversion and wrongful dominion over Plaintiff's mail, notices, mailbox, correspondence, and related property;

E. On the Fifth Cause of Action, awarding Plaintiff compensatory damages against the buyer defendants for tortious interference with prospective business relations in an amount to be determined at trial;

F. On the Sixth Cause of Action, declaring the parties' rights and obligations concerning post-closing condominium governance and municipal responsibility, and granting mandatory injunctive relief as necessary to complete the transition of ownership-side governance and responsibility away from Plaintiff;

G. On the Seventh Cause of Action, awarding Plaintiff compensatory damages against Defendants Lior Aldad, Esq. and Michelle I. Epstein, Esq. in an amount to be determined at trial;

H. On the Eighth Cause of Action, awarding Plaintiff compensatory damages against Defendant Lior Aldad, Esq. and Aldad & Associates, P.C. in an amount to be determined at trial, including damages arising from the allegedly improper escrow structure, delayed release of escrowed funds, lost use of funds, lost interest, carrying costs, legal expenses, professional fees, and consequential damages;

I. On the Ninth Cause of Action, awarding Plaintiff compensatory damages against Defendants Lior Aldad, Esq. and Michelle I. Epstein, Esq. in an amount to be determined at trial;

J. On the Tenth Cause of Action, awarding Plaintiff compensatory damages against the buyer defendants for conversion, replevin, civil theft, embezzlement and/or misappropriation of Sponsor property, including the value of the property estimated at approximately $85,000, loss of use, replacement costs, consequential damages, interest, return of the property where available, and any additional relief available for intentional misappropriation or wrongful retention of property;

K. On the Eleventh Cause of Action, permanently enjoining Defendants as set forth above;

L. Awarding Plaintiff costs and disbursements of this action; and

M. Awarding Plaintiff such other damages, equitable relief, declaratory relief, injunctive relief, pre-judgment interest, post-judgment interest, and further relief as this Court deems just and proper.

Dated: July 15, 2026

Respectfully submitted,

TP

TRISHA PARAVAS

Plaintiff Pro Se

Mailing Address:

14611 Southern Blvd. Suite # 492

Loxahatchee, FL 33470

Telephone: 332-895-0053

Email: Trish@RocheInvestors.com